## BENNETT *v.* FARKAS.

ATKINSON, J.  1. Where a tenant, in her counter-affidavit to a warrant to-evict her as a tenant holding over, avers that in the contract of tenancy the landlord also gave her an option to purchase at a stated sum "and. that in case they [the landlord] decided to sell said plantation to any one, they would give her notice of same and the refusal to purchase," the option to buy as thus alleged was for the stated sum, and not for a less sum for which the landlord might sell to another.  Under the facts a tender was necessary; but a tender of a less sum than the stated amount was not in compliance with the tenant's obligation, and. did not give to the tenant such an equitable title as would prevent her eviction after she has held over beyond her term of tenancy.

2. Where in such case the defendant had executed and filed the statutory bond with her counter-affidavit, after the part seeking equitable relief had been dismissed, it was competent for the court to permit counsel for the plaintiff to introduce evidence to meet the remaining issue, ten-ancy or no tenancy, raised by the affidavit.  Civil Code, §§ 4816, 4463.. *Latham* v. *Perryman,* 77 *Ga.* 579, upon review, is reaffirmed.  The evidence submitted for that purpose demanded the verdict, and it was not. erroneous for the court to direct the verdict and enter the judgment. *Judgment affirmed.  All the Justices concur, except Fish, C. J., absent.*

Argued March 3,—Decided August 9, 1906.

Rehearing denied August 17, 1906.

Eviction.    Before Judge Spence.    Dougherty superior court. April 4, 1905.

On January 2, 1905, Sam Farkas sued out a warrant to dispossess Mrs. Bennett as a tenant holding over.  She interposed her counter-affidavit, declaring that she was not holding possession of the land over and beyond the term for which the same was rented to her, and that the term of rent had not expired, but that in law and equity she was the true owner of the premises, entitled to possession of the same and to a deed thereto from Farkas, by reason of the following facts:  In 1883, John Flannery & Co., at her request. and with a view to her becoming the ultimate purchaser of it from them, purchased the land in dispute.  At that time her husband,. now deceased, owed Flannery & Co. about $2,335.65; and they were largely influenced, in making the purchase, by the prospect of in-cluding this debt in the price that would be charged her for the land, which debt would otherwise be lost to them.  On June 7, 1883, they entered with her into a written contract (a copy of which she attaches) by which they agreed to sell the land to her,

on terms therein stated, for $16,585.65, which included the original cost price to them of $14,250 and the amount of her husband's debt. She went into possession of the land under this contract; but on account of the large payments required thereunder, and of the fact that she had to pay said firm a large sum for supplies with which to make her crops, she was unable to pay the principal and interest required, and the contract became void. A similar agreement was made between them on February 29, 1884, with which she was likewise unable to comply. At the beginning of 1885, being indebted to said firm three or four thousand dollars for supplies previously advanced, she made no effort to make a new contract of purchase similar to those just mentioned; and she went into possession of the premises for that year as a tenant of said firm, and has so remained from year to year including 1904 (her term not expiring until January 1, 1905), but with certain rights under an agreement with said firm as hereafter set out. Notwithstanding adverse circumstances and unfavorable conditions, she was encouraged and induced to remain by the promise of Flannery & Co. that she should have the right at any time to purchase the premises at $14,250, and that they would give her notice and the refusal to purchase in case they decided to sell the plantation to any one, and she accordingly agreed to remain thereon as a tenant, to look after, cultivate, and protect it as her own, and to make substantial improvements on it at her own expense. These things she has done, relying upon said promise, which is supported by the consideration of her care, cultivation, and attention to the premises, and by the improvements she has made (specifying them) at a cost of $3,500, a considerable part of said sum being borrowed from time to time from Flannery & Co. with the knowledge and understanding that it was to be used in specified improvements, and same being repaid by her to said firm in the following fall. On October 7, 1904, they notified her that they had sold the plantation to Farkas, who would probably have a deed to the property in a few days, subject to her lease expiring on December 31. She immediately called upon Flannery & Co., insisted that she should have had notice of their intention to sell, and then and there claimed the refusal of the property. She used every effort of argument and persuasion to prevent the consummation of said sale to Farkas (which took place on November 12, 1904), making a tender to Flannery & Co. of the purchase-price,

to wit $14,000, as same had been agreed on with Farkas, and offer-
ing them a good guaranty company bond to indemnify them against
any and all claims for damages on the part of Farkas.  Farkas was
not a bona fide purchaser for value and without notice of her rights
and claims, but he had full and complete notice thereof.  He was
informed and knew of her claim to the right of a refusal of the
property in the spring of 1904, before the present negotiation was
begun; and on November 2, 1904, he received a written notice of
her rights and equities in the premises.  She herewith makes to
him a continuing tender of $14,000, together with lawful interest
thereon from the date of payment of that sum as purchase-money
for the property.  The damages recoverable at law would not be
adequate compensation for the non-performance of the contract.
She prays, for specific performance, by requiring Farkas to give her
the refusal of the premises at the price he paid therefor, viz., $14,-
000, together with lawful interest, and that, upon payment of said
sums by her, he be required to make her a deed to same; for such
further relief as may be appropriate; and that Flannery & Co. be
made parties, if this be necessary to the grant of the relief prayed.

The plaintiff demurred to all of the counter-affidavit following
the words, "term of rent has not expired," on the ground that the
same set forth no cause for equitable relief against the plaintiff,
and on several special grounds.  The demurrer was sustained.  The
plaintiff was then allowed (over the objection that after the dis-
missal of the counter-affidavit nothing remained to be tried) to in-
troduce in evidence a deed from Flannery & Co. to Farkas, dated
November 12, 1904; and testimony that Mrs. Bennett at the time
of the trial was in possession of the premises in dispute (described),
that her term of rent expired on January 1, 1905, and she had not
since rented from any one, that Farkas had demanded possession
of the premises from her on January 2, 1905, which demand she
has refused, and that the rent stipulated to be paid was $1,000,
which was a reasonable rental value, etc.  The court then directed
a verdict in favor of Farkas.  The defendant excepted to each of
these three rulings.  In the bill of exceptions it is contended: (1)
That the legal effect of sustaining the demurrer to the counter-affi-
davit was to put the whole case out of court, the part demurred to
and stricken constituting the whole defense, and not being inde-
pendent but merely explanatory of the contention that the defend-

ant was not a tenant holding over, but was, by reason of the facts set out, in equity the real owner of the premises; and hence the court was without jurisdiction to direct the verdict and allow the judgment complained of, after the counter-affidavit had been so stricken. (2) That there was no lawful authority to allow an entry of judgment against the defendant and the surety on her bond, before a judgment of recovery thereon and failure to pay.

*Clayton Jones* and *D. F. Crosland,* for plaintiff in error.

*Wooten & Hofmayer* and *Pope & Bennet,* contra.